Chase Auto Finance
Floor 11
201 N. Central Ave.
Phoenix, Az. 85004

UNITED STATES BANKRUPTCY COURT
FOR THE IL-SPRINGFIELD

In Re: Linda L Roth                    Case No 0770463
                                       Chapter 7

## REAFFIRMATION AGREEMENT

*[Indicate all documents included in this filing by checking each applicable box]*

- [X] Part A: Disclosure Statement (Pages 1 -3)
- [X] Part B: Reaffirmation Agreement (Page 4)
- [X] Part C: Certification by Debtor's Attorney (Page 5)
- [X] Part D: Debtor's Statement in Support of Reaffirmation Agreement (Page 6)
- [X] Part E: Motion for Court Approval (Page 7)
- [X] Proposed Order Approving Reaffirmation Agreement (Page 8)

**PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR(S)**

1. **DISCLOSURE STATEMENT**

DATE OF DISCLOSURE STATEMENT: 3/20/2007

BEFORE AGREEING TO REAFFIRM A DEBT, REVIEW THESE IMPORTANT DISCLOSURES:

SUMMARY OF REAFFIRMATION AGREEMENT. This Summary is made pursuant to the requirements of the Bankruptcy Code.

| AMOUNT REAFFIRMED: | ANNUAL PERCENTAGE RATE: |
|---|---|
| $12,345.76 | 7.15 % |
| This is the amount of debt you have agreed to reaffirm. Your credit agreement may obligate you to pay additional amounts, which may come due after the date of this disclosure statement. Consult your credit agreement. | |
| The "AMOUNT REAFFIRMED" disclosed above includes the following fees and costs: | |
| Attorney Fees: $    0.00<br>Costs:        $    0.00 | |

**Notice of Security Interest:** A security interest or lien in goods or property is asserted over the debt that you are reaffirming. JPMorgan Chase Bank, N.A. or Chase Bank USA, N.A. ("Creditor") has a security interest in the motor vehicle described below:

Motor Vehicle (Make/Model/Year) Dodge, Caravan, 2003 Original Purchase Price $17,694.75.

BK7021

## PAYMENT SCHEDULE:

Your first payment in the amount of $325.95 is due on 02/18/2007 All other payments will be made according to your original contract.

**Simple Interest Contract Disclosure:** Your credit agreement is a simple interest contract. Please review your credit agreement for an explanation on how early or late payments effect the amount of interest due on your credit agreement.

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR(S)

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B.

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

**YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT.** You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

BK7021

**Frequently Asked Questions:**

**What are your obligations if you reaffirm this debt?**  A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

**Are you required to enter into a reaffirmation agreement by any law?**  No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

**What if your creditor has a security interest or lien?**  Your bankruptcy discharge does not eliminate any lien on your property. A 'lien' is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

**Note:** When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

BK7021

## PART B: REAFFIRMATION AGREEMENT

I/we (hereinafter "I" shall refer to debtor and co-debtor) agree to reaffirm the debts arising under the credit agreement described below.

---

**BRIEF DESCRIPTION OF CREDIT AGREEMENT:**

Retail Installment Contract Date: 12/04/04    Account No.: 10432410235504

Motor Vehicle Make/Model/Year: 2003 dodge caravan
VIN Number: 2D4GP443X3R 297393

---

I agree to be bound by all the terms and conditions of the credit agreement, which is hereby incorporated by reference. I agree to the "ANNUAL PERCENTAGE RATE" disclosed in the PART A: DISCLOSURE STATEMENT. I agree to pay the "AMOUNT REAFFIRMED" disclosed in the PART A: DISCLOSURE STATEMENT. I agree to make monthly payments described in the REPAYMENT SCHEDULE disclosed in the PART A: DISCLOSURE STATEMENT and in the credit agreement each month until the debt has been satisfied. All other terms of the credit agreement remain unchanged except for any changes listed below. If the Creditor has agreed to any changes to the credit agreement as part of this Reaffirmation Agreement, such changes are listed below:

**Description of any changes to the credit agreement made as part of this reaffirmation agreement:**
None

SIGNATURE(S):

Borrower (Debtor):    Co-borrower (Co-Debtor), if also reaffirming these debts:

Linda Leigh Roth    Paul Brian Roth
(Print name)    (Print name)

Linda L Roth    Paul Brian Roth
(Signature)    (Signature)

Date: 3-27-07    Date: 3-27-07

Accepted by Creditor:

CODY RACKI for JPMorgan Chase Bank
(Print name)

Cody Rac
(Signature)

Date of Creditor Acceptance: 4-25-07

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY

I hereby certify that:

1) this agreement represents a fully informed and voluntary agreement by the debtor,
2) this agreement does not impose a hardship on the debtor or any dependent of the debtor; and
3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

*[Check the following box if the presumption of undue hardship exists for this agreement]*
☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payments under the Reaffirmation Agreement.

Printed Name of Debtor's Attorney: _K R M___

Signature of Debtor's Attorney: _____    Date _4/3/07_

BK7021

# PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

1. I believe this Reaffirmation Agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $ 3675 , and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $ 3349.65 , leaving $ 325.95 to make the required payments on this reaffirmed debt. I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: _____
_____
_____
_____

I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed Reaffirmation Agreement (Part B).

Debtor's Signature: _Linda L Roth_    Dated: 3-27-07

Co-Debtor's Signature: _Paul B Roth_    Dated: 3-27-07

BK7021

PART E: MOTION FOR COURT APPROVAL

UNITED STATES BANKRUPTCY COURT
FOR THE IL-SPRINGFIELD

In Re: Linda L Roth

Case No. 0770463
Chapter 7

## DEBTOR'S MOTION FOR APPROVAL OF REAFFIRMATION AGREEMENT

NOW COMES, _____, Debtor(s) herein, and in support of this Motion for Approval of Reaffirmation Agreement, states as follows:

1. I (we), the Debtor(s), affirm the following to be true and correct.

2. I (we) am (are) not represented by an attorney in connection with this reaffirmation agreement.

3. I (we) believe this reaffirmation agreement is in my (our) best interest based on the income and expenses I (we) have disclosed in my (our) Statement in Support of this reaffirmation agreement, and because (provide any additional relevant reasons the court should consider):

_____

_____

THEREFORE, I (we) ask the court for an order approving this reaffirmation agreement.

*/s/ Linda L Roth*
Debtor

Date: 3-27-07

*/s/ Paul B Roth*
Co-Debtor

BK7021

UNITED STATES BANKRUPTCY COURT
FOR THE IL-SPRINGFIELD

In Re: Linda L Roth

Case No. 0770463
Chapter 7

## ORDER APPROVING REAFFIRMATION AGREEMENT

The debtor(s)_____ have filed a motion for approval of the reaffirmation
    (Name(s) of debtor(s))

agreement dated_____ made between the debtor(s) and Chase Bank USA, N.A.
   (Date of agreement)             (Name of creditor)

The court held the hearing required by 11 U.S.C. § 524(d) on notice to the debtor(s) and the creditor on

_____.
 (Date)

  IT IS HEREBY ORDERED that the Court grants the Debtor's motion and approves the reaffirmation agreement described above.

Date:_____

_____
    HONORABLE

BK7021

## STATE OF ILLINOIS
### CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 2D4GP443X3R297393 | 2003 | DODGE | CARAVAN | SPORT VAN | X5040062011 |

| DATE ISSUED | ODOMETER | CCM | PURCHASED | | PURCHASE DATE |
|---|---|---|---|---|---|
| 02/09/05 | 50752 | | USED | | 12/04/04 |

MOBILE HOME SQ. FT.

TYPE OF TITLE: ORIGINAL

**MAILING ADDRESS**
CHASE MANHATTAN BANK USA NA
PO BOX 29214
PHOENIX AZ 85038

LEGEND(S): ACTUAL MILEAGE

**OWNER(S) NAME AND ADDRESS**
LINDA L ROTH
PAUL B ROTH
1824 N 21ST ST
SPRINGFIELD IL 62702

**FIRST LIENHOLDER NAME AND ADDRESS**
CHASE MANHATTAN BANK USA NA
PO BOX 29214
PHOENIX AZ 85038

**SECOND LIENHOLDER NAME AND ADDRESS**

**RELEASE OF LIEN**
The holder of Lien on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____
Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

**NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State.
Secured Party: _____ Address: _____

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

### ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
ODOMETER READING ___ NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING-ODOMETER DISCREPANCY

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair market value unless this document is accompanied by a salvage application."

Signature(s) of Seller(s) _____
Printed Name(s) of Seller(s) _____
"I am aware of the above odometer certification made by seller."
Signature(s) of Buyer(s) _____ Printed Name _____
DATE OF SALE _____

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS, AT SPRINGFIELD.

D35988526
CONTROL NO.

*Jesse White*
JESSE WHITE, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

RETAIL INSTALLMENT CONTRACT — MOTOR VEHICLE — SIMPLE INTEREST

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit, including your downpayment of $ 396.77 $ 21908.47 |
| 7.15 % | $ 3817.95 | $ 17694.75 | $ 21512.70 | |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 66 | $ 325.95 | monthly beginning 01/18/2005 |
| N/A | $ N/A | N/A |

| | |
|---|---|
| Cash Price | $ 14990.00 |
| Less Cash Downpayment | $ N/A |
| Value of Trade-in | $ 1840.52 |
| Less Payoff | $ 1445.15 |
| To HEIGHTS FINAN | 395.77 |
| Unpaid Balance of Cash Price | $ 14594.23 |

Amount Paid to Others for You

| | |
|---|---|
| Unpaid Balance Due on Trade-In | N/A |
| 1992 CHEVROLET TRUCK ASTRO | |
| Insurance Companies | |
| N/A | N/A |
| GAP | 400.00 |
| N/A | N/A |
| Public Officials (Licenses, Title & Taxes) | $ 1147.00 |
| To O'BRIEN KIA O | 53.52 |
| To FWS | $ 1500.00 |
| To N/A | N/A |
| To N/A | N/A |

Buyer(s): LINDA L ROTH 1824 N 21ST ST SPRINGFIELD IL 62702

Buyer(s): PAUL R ROTH 1824 N 21ST ST SPRINGFIELD IL 62702

Seller: O'BRIEN KIA OF SPRINGFIELD 909 S. DIRKSEN PKWY SPRINGFIELD IL 62703

| New or Used | Year | Make of Vehicle | Model | Body Style | No. Cyl. | Serial Number | Body Color | Trim Color | Key No. |
|---|---|---|---|---|---|---|---|---|---|
| USED | 2003 | DODGE TRUCK | GRAND | CARAVAN | | 2D4GP443X3R297393 | WHITE | SPORT | N/A |
| N/A | | | | | | | | | |
| N/A | | | | | | | | | |

Buyer Promises to pay to the order of Seller at the offices of: CHASE MANHATTAN BANK USA, NA (Assignee) located in PHOENIX, AZ ... 65 installments of $ 325.95 and a final installment of $ 325.95 ... JANUARY 18th 2005 ... 7.15 %

Dated: DECEMBER 4th, 2004

Seller: O'BRIEN KIA OF SPRINGFIELD

By: [signature]

Guarantor: N/A

Buyer: [signature] Linda L Roth  12/04/2004
Buyer: [signature] Paul Roth  12/04/2004

Other Insurance: FWS ... cost for a term of 36 months will be $ 1500.00

## ADDITIONAL AGREEMENTS OF BUYER

1. Waiver of any default in the payment of any installment of the total of payments when due shall not operate as a waiver of any subsequent default. No extension of the time of payment or any other modification of the terms of this contract shall be binding on holder unless written consent thereto is given by an executive officer of holder. This contract shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns.

2. Buyer agrees to keep said motor vehicle fully insured against loss by fire, theft and collision for the entire term of this contract. Insurance coverages, other than required insurance, have been voluntarily contracted for by Buyer. Buyer may elect to authorize to purchase all insurance included in this contract. Insurance company, agent or broker of his own choice. If Buyer so elects, he shall furnish Seller with a policy or binder issued by a company acceptable to Seller on or before taking possession of the motor vehicle, and inclusion of Buyer's premiums in this contract is optional with Seller. All policies procured by Buyer shall provide that loss, if any, shall be payable to Buyer and to the holder of this contract, as their respective interest may appear and a clause requiring insurer to give the holder 10 days written notice of cancellation. In the event of the failure of Buyer to insure said motor vehicle or to deliver a fully paid policy to holder at the times and in the manner herein provided, or in the event of cancellation or termination of any policy during the term of this contract without replacement by Buyer within 10 days, such failure shall constitute an event of default hereunder. Holder shall have the option, but shall not be required, to procure such insurance for Buyer and to advance the premium therefor. Buyer hereby promises to pay any such premiums and to pay a finance charge thereon at the annual percentage rate stated on the reverse side hereof as an additional indebtedness due hereunder. Buyer hereby assigns to holder the proceeds of all insurance on said motor vehicle including unearned premium refunds. In the event of default by Buyer hereunder, holder is authorized to cancel such insurance, receive and receipt for unearned premiums and to endorse any check or draft therefor made payable to Buyer. Any unearned premium received by the holder shall be credited to the final maturing installments of this contract except to the extent applied toward payment for similar insurance protecting the interest of Buyer and the holder, or either of them.

3. COLLATERAL PROTECTION INSURANCE. Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

4. Buyer shall not use or permit said motor vehicle to be used in violation of any law or ordinance, State, Federal, or Municipal. Buyer shall not sell, lease, encumber or place said motor vehicle in any other person's possession or remove it from the State of Illinois without the written consent of the holder of this contract. Buyer shall not use said motor vehicle for hire or as a taxi. Buyer shall keep said motor vehicle free from all mechanic's liens, tax liens and all other liens.

5. Upon the occurrence of any event of default, the holder of this contract shall have the rights and remedies provided by Article 9 of the Illinois Uniform Commercial Code including, but not by way of limitation, the right (a) to take immediate possession of the motor vehicle, with or without judicial process, and for such purpose, to enter upon the premises where it may be located; and (b) to give Buyer reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or other intended disposition thereof is to be made; and (c) to dispose of the motor vehicle at public or private sale in accordance with said notice to Buyer and to buy at a public sale; and (d) to apply the proceeds of sale first to the reasonable expenses of retaking, holding, preparing for sale and selling and to reasonable attorneys' fees and legal expenses incurred by holder, and second, to satisfaction of Buyer's indebtedness hereon, and third, to satisfaction of any subordinate security interest in the motor vehicle if demand therefor is received by holder before disposition of the proceeds. And payment to Buyer for any surplus remaining. Buyer shall be liable for any deficiency. If the Buyer has paid an amount equal to 30% or more of the deferred payment price at the time of repossession, the Buyer may, within 21 days, redeem the collateral from the holder by tendering (a) the total of all unpaid amounts, including any unpaid delinquency or deferral charges due at the time of tender, without acceleration, and (b) performance necessary to cure any default other than nonpayment of the amounts due; and (c) any reasonable cost or fee incurred by the holder in the retaking of the goods. Tender of payment and performance in this manner restores to the Buyer his rights under the contract as though no default had occurred. The Buyer has a right to redeem the collateral from the holder only once in this manner. At any time before disposition of the motor vehicle as provided herein, Buyer may redeem it by paying holder all indebtedness secured hereby as well as expenses reasonably incurred by holder in retaking, holding, preparing the motor vehicle for sale, arranging for the sale and reasonable attorneys' fees and legal expenses. If it is otherwise agreed by Buyer that the requirement of reasonable notice shall be met if notice is mailed to Buyer at the address of Buyer shown hereon not less than 10 days prior to the sale or other disposition. All rights and remedies of the holder, whether provided for in this contract or conferred by law, are cumulative.

6. Holder is authorized to apply any payment made by Buyer hereon to such indebtedness of Buyer to holder whether hereunder or under any other contract or otherwise.

7. Buyer agrees that holder, in retaking said motor vehicle as herein provided, may take possession of personal effects and property found therein and hold the same for delivery to Buyer.

8. Buyer agrees that if delivery of the motor vehicle and trade-in by Buyer or certain information, the identifying number, which was not known at the time of signing of this Assignment may be inserted by Seller in Seller's counterpart of the contract after it has been signed by Buyer.

9. If any provision of this contract is held invalid, the invalidity shall not affect the remaining provisions thereof.

**NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM.**
(1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY. (2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.

## ASSIGNMENT

FOR VALUE RECEIVED, Seller hereby sells, assigns and transfers to **CHASE MANHATTAN BANK USA NA** — Phoenix AZ

ASSIGNEE, its successors and assigns, all of Seller's right, title and interest in and to the within contract and the motor vehicle described therein. To induce Assignee to purchase said contract, Seller represents and warrants to Assignee (1) that the within contract is valid and genuine and correctly states the terms of the retail installment transaction between Seller and Buyer; (2) that the motor vehicle described has been delivered to and accepted by the Buyer; (3) that the down payment was paid in full, in cash or in trade, and that no part was loaned to Buyer by Seller; (4) that Seller had good title to and the right to sell said motor vehicle to Buyer and that the motor vehicle is free of all liens, claims and encumbrances; (5) that no notice of any defense or right of action has been received by Seller from Buyer nor has Seller any knowledge of any fact that would impair the validity of the contract; (6) that Seller has the right to sell and assign this contract to Assignee; (7) that all Buyers have legal capacity to contract; (8) that on the date of the contract Seller executed and delivered to each Buyer a completed copy of the contract and to the Guarantor a completed copy of the contract and Explanation of Guarantor's Obligation; (9) Seller has complied with all requirements of the Federal Truth in Lending Act, Regulation Z, the Federal Equal Credit Opportunity Act and the Illinois Motor Vehicle Retail Installment Sales Act and the regulations of all governmental agencies; (10) that on the date of the contract, Seller assigned to Buyer the Manufacturer's Statement of Origin or the existing Certificate of Title, as the case may be; issued covering said motor vehicle, procured from Buyer a signed application for a new certificate of title to be issued to Buyer and mailed to Assignee showing correctly the date of the within contract, the name and address of Assignee as holder of the first lien on the motor vehicle and the amount of said lien and caused to be delivered to the Secretary of State of Illinois all of the documents described with the prescribed fee; (11) that the motor vehicle has not been used as a taxi or for hire or for commercial transportation or by law enforcement agencies; (12) that the sale was made at Seller's place of business and was not a door-to-door sale within the definition of the Federal Trade Commission Trade Regulation Rule or the Illinois Consumer Fraud Act; and (13) that the Seller believes the Buyer to be of good moral character and that Buyer will not use or permit said vehicle to be used for unlawful purposes. If any of the foregoing representations and warranties is untrue, Seller agrees to repurchase the within contract for the unpaid balance and all other indebtedness then due from Buyer thereon, together with reasonable attorney fees, costs and expenses incurred by Assignee.

Dated: 12/04/04

**O'BRIEN KIA OF SPRINGFIELD**

By: _____ Authorized Signature — Title

### REPURCHASE AGREEMENT (Execute Assignment Also)

In addition to Seller's obligations set forth in the above assignment, Seller agrees, in the event a claim or defense is asserted against Assignee by the Buyer at any time, Seller shall, on demand, repurchase the within contract for cash at a price equal to the net amount remaining unpaid on said contract; and Seller shall indemnify and hold Assignee harmless from any and all liabilities that may result at any time from any claim asserted by Buyer for recovery of amounts paid arising out of any promise, representation or warranty made by Seller or the Manufacturer to Buyer.

Dated: _____

By: _____ Authorized Signature — Title

### FULL RECOURSE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations set forth in the above assignment, Seller unconditionally guarantees prompt and full payment by Buyer of the Total of Payments and all other amounts due from Buyer under the within contract. If Buyer shall fail to pay any installment when due, Seller agrees to pay to Assignee, on demand, the full amount remaining unpaid on said contract. Seller agrees that it shall not be necessary for Assignee to proceed first against Buyer or to have recourse to the motor vehicle before proceeding to enforce this agreement. Extension of the time of payment or variation of terms effected by Assignee with Buyer shall not release Seller from his obligation hereunder.

Dated: _____

By: _____ Authorized Signature — Title

### LIMITED REPURCHASE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations set forth in the above assignment, Seller agrees, in the event that Assignee repossesses the motor vehicle described in the within contract on account of default by Buyer and delivers the same to Seller, Seller shall, on demand, repurchase said motor vehicle for cash at a price equal to the amount remaining unpaid on said contract plus all costs and expenses, including attorneys' fees, incurred by Assignee by reason of Buyer's default or in connection with repossession and delivery of the motor vehicle. This repurchase agreement shall remain in effect until Buyer has paid _____ full installments of the Total of Payments. Extension of the time of payment or variation of terms effected with the Buyer shall not release Seller from his obligation hereunder.

Dated: _____

By: _____ Authorized Signature — Title

### LIMITED GUARANTEE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations set forth in the above assignment, Seller unconditionally guarantees that, in the event of default by the Buyer in the full payment of any installment of the within contract when due, Seller will pay to Assignee, on demand, the unpaid balance then due on the contract up to the limit of $ _____. This guarantee shall terminate after Buyer has paid _____ full scheduled installments on the Total of Payments. Extension of the times of payment or variation of terms effected by Assignee with Buyer shall not release Seller from his obligation hereunder.

Dated: _____

By: _____ Authorized Signature — Title